## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK A. WESTON,** | : | **CIVIL ACTION NO. 1:19-CV-1212** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **JUSTIN H. LENSBOWER,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Frank Weston ("Weston"), an inmate who was housed at all relevant times at the Franklin County Jail, in Chambersburg, Pennsylvania, commenced this action pursuant to 42 U.S.C. § 1983 asserting that defendants failed to provide him adequate medical care for his back pain. (Doc. 1). Named as defendants are Justin H. Lensbower and Sierra Helser (together, "PrimeCare defendants"), and Deputy Warden Weller, Lieutenant Elliott, Officer Kirby, Officer Shindlerdecker, Officer Metzler, and Officer French (collectively, "Franklin County defendants"). Before the court are two Rule 12(b) motions (Docs. 20, 25) to dismiss filed by the PrimeCare defendants and the Franklin County defendants, respectively. For the reasons set forth below, the court will grant each pending motion.

### I.   Factual Background & Procedural History

Weston alleges that on December 7, 2017, he was getting out of the shower when his back "gave out" and he began to experience back pain. (Doc. 1, at 4). Weston proceed to walk "in a bent-over position" to his housing unit. (Id. at 4-5). Weston claims that he asked defendant Kirby to call the medical department. (Id.

at 5).  Defendant Kirby advised Weston that unless it was an emergency, he would have to submit a sick call.  (Id.)  When defendant Kirby's shift ended, he was relieved by defendant Metzler around 10:30 a.m.  (Id.)  Weston asked defendant Metzler to call the medical department.  (Id.)  Defendant Metzler called the medical department at 12:30 p.m.  (Id.)

At approximately 2:25 p.m., defendant nurse Helser came to the block, took Weston's vital signs, and requested that a wheelchair be brought to the cell block. (Id. at 7).  Weston was transported by wheelchair to the medical department where he underwent an electrocardiogram ("EKG") test and a urinalysis.  (Id.)  The EKG revealed that Weston's vital signs were normal, and the urine sample was abnormal. (Id.)  Weston was then taken by wheelchair back to his cell block.  (Id.)

Weston asserts that he had difficulty ambulating around the cell block.  (Id.) Weston further alleges that defendant Helser subsequently asked to see him in the classroom on the housing unit.  (Id.)  Weston claims that it was a struggle for him to walk to the classroom.  (Id.)  Later that evening, medication was administered to inmates on Weston's housing unit.  (Id.)  Weston requested that he be provided his medication in his cell as opposed to going the medication line.  (Id.)  Defendant Helser allegedly denied his request to receive his medication in his cell because he was "alright" and able to walk to the medication line.  (Id. at 8, 11).  Weston protested that he did not want his medication brought to his cell, shouted expletives to the nurse in charge, and demanded that he be transported to the hospital.  (Id.) Weston ultimately received a misconduct for his behavior.  (Id. at 8, 10-11).

Weston filed a grievance concerning the medical treatment that he received.

(<u>Id.</u> at 6-8).  Defendant Lensbower responded to the grievance as follows:

> Your medical record was reviewed in response to your grievance
> received.  You claim you were not treated appropriately for your
> complaint of back pain.  You were assessed by medical by protocol.
> You were told to rest by lying down.  You were observed in dayspace
> after this assessment sitting in a chair in dayspace.  You had difficulty
> ambulating during these times as noted on observation reports.
> Medication was administered to you per protocol and policy.  If you
> have any further medical or mental health concerns, please feel free to
> submit a sick call slip, the process for which can be found in your
> inmate handbook.

(<u>Id.</u> at 9).

Defendants move to dismiss Weston's complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  (Docs. 20, 25).  Weston failed to respond to defendants'

motions and the time for responding has now passed.[1]  Therefore, the motions are

deemed unopposed and ripe for resolution.

## II.     <u>Legal Standard</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6),

the court must "accept as true all [factual] allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most

favorable to the plaintiff."  <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)

---

[1] Weston was directed to file a brief in opposition to defendants' motions and
was admonished that failure to file an opposition brief would result in defendants'
motions being deemed unopposed.  (Doc. 30) (citing M.D. PA. LOCAL RULE OF
COURT 7.6).  (<u>See</u> <u>also</u> Doc. 7, Standing Practice Order in Pro Se Plaintiff Cases, at
2).

(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."
Iqbal, 556 U.S. at 678.

## III.    PrimeCare Defendants' Motion

In order to establish an Eighth Amendment medical claim,[2] a plaintiff "must
show (i) a serious medical need, and (ii) acts or omissions by prison officials that
indicate deliberate indifference to that need."  Natale v. Camden Cty. Corr. Facility,
318 F.3d 575, 582 (3d Cir. 2003) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.
1999)).  A serious medical need is "one that has been diagnosed by a physician as
requiring treatment or one that is so obvious that a lay person would recognize the
necessity for a doctor's attention."  Monmouth Cty. Corr. Institutional Inmates v.
Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  In addition, "if unnecessary and wanton
infliction of pain results as a consequence of denial or delay in the provision of
adequate medical care, the medical need is of the serious nature contemplated by
the eighth amendment."  Id. (citation omitted).  A prison official acts with deliberate
indifference to an inmate's serious medical needs when he "knows of and
disregards an excessive risk to inmate health or safety; the official must both be

---

[2] It is unclear whether Weston was a pretrial detainee or convicted prisoner
during his time at the Franklin County Jail.  Pretrial detainees are protected by the
Due Process Clause of the Fourteenth Amendment, not the Cruel and Unusual
Punishment Clause of the Eighth Amendment.  See Bell v. Wolfish, 441 U.S. 520,
535 n.16 (1979).  However, the Fourteenth Amendment provides "at least as much
protection as does the Eighth Amendment," and in cases involving allegations of
inadequate medical care, the Third Circuit Court of Appeals typically reviews both
claims using the Eighth Amendment standard.  Gannaway v. Berks Cty. Prison,
439 F. App'x 86, 89 n.2 (3d Cir. 2011) (nonprecedential) (citing Natale v. Camden
Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003)).  Thus, the court will address
Weston's deliberate indifference claim pursuant to the Eighth Amendment
standard.

aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. See Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

## A.    Defendant Lensbower

In the complaint, Weston fails to set forth any allegations against defendant Lensbower and fails to demonstrate any personal involvement on the part of Lensbower.  The only reference to defendant Lensbower pertains to his denial of a grievance, which was submitted as an attachment to the complaint.  (Doc. 1, at 9). To the extent that Weston attempts to hold defendant Lensbower liable based on his involvement in the grievance procedure, this claim fails.  It is well-established that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992).  Thus, insofar as Weston's claims against defendant Lensbower are premised on his denial of a grievance, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim.  See Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability).  Defendant Lensbower is entitled to dismissal from this action based on lack of personal involvement in the alleged wrongful conduct.

## B.    Defendant Helser

Weston alleges that nurse Helser provided inadequate medical care for his back pain when he was housed at the Franklin County Jail.  Prison medical personnel may be found to have acted with deliberate indifference where they "prevent[ed] an inmate from receiving recommended treatment for serious medical needs." Lanzaro, 834 F.2d at 346-47.  Weston can also establish deliberate indifference by alleging facts showing that defendant Helser "den[ied] reasonable

requests for medical treatment . . . and such denial expose[d] [him] to undue suffering or the threat of tangible residual injury." Id.  If the alleged inadequate care "was a result of an error in medical judgment," then Weston's claims must fail. Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).   If, however, the failure to provide adequate care was deliberate, and motivated by non-medical factors, then Weston's claims are actionable.

Weston alleges that defendant Helser ordered that he be transported by a wheelchair after he injured his back, she performed diagnostic testing including an EKG and urinalysis, and denied his request to receive medication in his cell.  Based on these allegations, defendant Helser did not exhibit a wanton disregard of Weston's medical needs, did not fail to provide any medical treatment, and did not deny any requests for medication[3].  To the extent that Weston disagrees with defendant Helser's decision that he was required to obtain his medication on the medication line, such disagreement does not give rise to a constitutional claim given the considerable latitude afforded prison authorities in the treatment of prisoners. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (holding that "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation); Hartman v. Corr. Med. Serv., 366 F. App'x 453, 455 (3d Cir. 2010) (dismissing plaintiff's complaint as not based on an Eighth Amendment deliberate indifference theory when "his allegations reflect . . . his disagreement with the manner in which defendant . . . directed that all of [plaintiff]'s medications

---

[3] Weston does not allege that he failed to receive his medication.  (See Doc. 1).

be administered by medical staff").  Weston fails to allege facts from which it can

reasonably be inferred that defendant Helser exhibited a deliberate indifference to

his medical needs.  The claims against defendant Helser will be dismissed.

**IV.**   **Franklin County Defendants' Motion**

    **A.**   **Defendants Weller, Elliot, and Shindlerdecker**

Weston's claims against defendants Weller, Elliott, and Shindlerdecker must

be dismissed because his complaint is devoid of facts showing how they were

involved in his allegedly defective medical treatment.

With respect to defendant Weller, the Deputy Warden of the Franklin County

Jail, the complaint contains no allegations whatsoever as to her involvement in the

alleged inadequate medical care.  (See Doc. 1).  Aside from naming Deputy Warden

Weller as a defendant, Weston sets forth no allegations against her.  A claim of a

constitutional deprivation cannot be premised merely on the fact that the named

defendant was the prison warden, or a prison supervisor, when the incidents set

forth in the complaint occurred.  See Rode, 845 F.2d at 1207.  Additionally, to the

extent that Weston attempts to hold defendant Weller liable based on her

supervisory role as Deputy Warden, it is well-established that officials may not be

held liable for unconstitutional conduct of their subordinates under a theory of

*respondeat superior*.  See Rode, 845 F.2d at 1207.  Accordingly, defendant Weller is

entitled to dismissal from this action.

As to defendant Elliott, Weston alleges that Officer Johns called Elliott when

Weston began yelling at the nurse administering medication on his housing unit.

Regarding defendant Shindlerdecker, Weston alleges that he was present when

defendant French told Weston that he must stand in the medication line to receive his medication.  The complaint does not set forth any further allegations against defendants Elliot and Shindlerdecker and does not allege that they directly treated or monitored Weston's medical needs.  Weston fails to allege sufficient facts to establish that defendants Elliott and Shindlerdecker were personally involved in the alleged inadequate medical care he received.  Weston has thus failed to state a claim against defendants Elliott and Shindlerdecker.

### B.      Defendants Kirby, Meltzer, and French

As stated *supra*, in order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Natale, 318 F.3d at 582 (citing Rouse, 182 F.3d at 197).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention."  Lanzaro, 834 F.2d at 347.

In the complaint, Weston alleges that his back "gave out."  (Doc. 1, at 4).  Assuming *arguendo* that Weston's back pain rises to the level of a serious medical condition for purposes of the Eighth Amendment analysis, the court must determine whether Weston has pled a deliberate indifference to that need.  The allegations in the complaint demonstrate that defendants Kirby, Meltzer, and French were not deliberately indifferent to Weston's serious medical need. Weston's single allegation that defendants Kirby and Meltzer failed to immediately call the medical department does not state a constitutional claim upon which relief

may be granted.  Weston alleges that he fell in the shower on the morning of December 7, 2017 and received treatment later that afternoon.  (Doc. 1, at 4).  This brief delay in Weston's medical treatment does not rise to the level of deliberate indifference and thus does not violate the Eighth Amendment.  See Rhines v. Bledsoe, 388 F. App'x 225, 228 (3d Cir. 2010) (holing that the failure to immediately order an MRI upon prisoner's request does not demonstrate deliberate indifference); Bickel v. Miller, 2011 WL 4526960 (3d Cir. 2011) (holding that the allegation of a brief delay in providing unspecified medicine to an inmate does not state an Eighth Amendment claim).

Additionally, after defendant Metzler called the medical department, every other allegation against the Franklin County defendants pertains to the time period *after* Weston was being treated by prison medical staff.  None of the Franklin County defendants are medical professionals, and therefore cannot be considered deliberately indifferent simply because they "failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."  Durmer, 991 F.2d at 69 (affirming that as a matter of law, non-physician prison officials could not be considered deliberately indifferent for this reason); see also Smith v. O'Boyle, 251 F. App'x 87, 89 (3d Cir. 2007) (nonprecedential) (affirming dismissal of § 1983 claim against prison officials because "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians").  Absent a "belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner," the Franklin County defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate

indifference.  Innis v. Wilson, 334 F. App'x 454, 456-57 (3d Cir. 2009) (affirming dismissal of prisoner's deliberate indifference claim against non-medical prison officials).  Weston failed to allege this belief or actual knowledge.  Further, defendant French's refusal to accommodate Weston's request to receive his medication in his cell fails to establish deliberate indifference because defendant French was entitled to defer to the medical professional's determination that Weston was able to walk to the medication line.  See Smith, 251 F. App'x at 89.

For all the foregoing reasons, Weston's claims against defendants Kirby, Meltzer, and French will be dismissed.

### C.    Qualified Immunity

Even if Weston had stated a colorable deliberate indifference claim, the Franklin County defendants are nevertheless entitled to qualified immunity from this claim for damages.  In order to establish a civil rights claim, Weston must show the deprivation of a right secured by the United States Constitution or the laws of the United States.  However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known."  Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation

marks omitted).  "Qualified immunity balances two important interests—the need

to hold public officials accountable when they exercise power irresponsibly and the

need to shield officials from harassment, distraction, and liability when they

perform their duties reasonably."  Pearson, 555 U.S. at 231.  It "provides ample

protection to all but the plainly incompetent or those who knowingly violate the

law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Thus, so long as an official

reasonably believes that his conduct complies with the law, qualified immunity will

shield that official from liability."  Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012)

(citing Pearson, 555 U.S. at 244).  Although qualified immunity is generally a

question of law that should be considered at the earliest possible stage of

proceedings, a genuine dispute of material fact may preclude summary judgment

on qualified immunity.  Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1)

whether a constitutional or federal right has been violated; and (2) whether that

right was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled

in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion

in deciding which of the two Saucier prongs should be addressed first).  As stated,

the court finds that Weston failed to establish the violation of a constitutional right.

The Franklin County defendants could not have recognized that their actions of

initially informing Weston to submit a request slip to the medical department, and

requiring Weston to walk to the medication line (as advised by medical personnel),

would violate "clearly established statutory or constitutional right[ ] of which a

reasonable person would have known." <u>Wilson</u>, 526 U.S. at 609.  Therefore, the

Franklin County defendants are protected from liability by qualified immunity.

**V.**     **Leave to Amend**

When a complaint fails to present a *prima facie* case of liability, district courts

must generally grant leave to amend before dismissing the complaint.  <u>See</u> <u>Grayson</u>

<u>v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d

113, 116-17 (3d Cir. 2000).  Specifically, the Third Circuit Court of Appeals has

admonished that when a complaint is subject to dismissal for failure to state a claim,

courts should liberally grant leave to amend "unless such an amendment would be

inequitable or futile." <u>Phillips</u>, 515 F.3d at 245 (citing <u>Alston v. Parker</u>, 363 F.3d 229,

235 (3d Cir. 2004)).  For the reasons set forth above, Weston's claims against the

defendants are legally and factually flawed and thus incurable.  Therefore, the court

concludes that curative amendment would be futile.

**VI.**     **Conclusion**

We will grant defendants' motions (Docs. 20, 25) to dismiss.  An appropriate

order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       July 8, 2020